Case number 17-2514, United States of America v. James Wiggins. Argument not to exceed 15 minutes per side. Ms. Jessica Winters, you may proceed for the appellant. Good morning, Your Honors, and may it please the Court. Jessica Winters for the appellant, James Wiggins. I would like to reserve four minutes for rebuttal with the Court's permission. This case is an appeal of Mr. Wiggins' conviction for aiding and abetting a carjacking and his subsequent sentencing to 151 months incarceration. It arises from the Eastern District of Michigan with the Honorable Stephen Murphy presiding. I raised three issues for reversal in the briefing before the Court. However, this morning I would like to focus on only one of those issues, and that being the denial of the appellant's motion for mistrial. The prosecution in Mr. Wiggins' case relied heavily on the testimony of Tyree Durrell, who was Mr. Wiggins' co-defendant and the only witness at trial who identified Mr. Wiggins as having participated in the carjacking. Mr. Durrell was a high schooler at the time of the crime. He was directly asked by the prosecution during his testimony at page 1177 of the record whether he had ever stolen cars with Mr. Wiggins on a prior occasion. He answered yes to this question. It's our position, Your Honors, that this testimony provided Mr. Wiggins' jurors with the foothold they needed to climb aboard the prosecution's bandwagon and ride it all the way to conviction, with the apparent belief that because he did it once, he probably did it this time. I submit to Your Honors that this testimony was improper, and that a weighing of the fives earned factor... Why didn't you raise an immediate objection? Your Honor, he actually raised it before trial even began in the form of a motion in limine. Well, I know that. So this obviously was in violation of the Court's ruling on the motion in limine. But why was there no objection made at that point when the question was asked and answered? Your Honor, the way that his attorney explained it later was that he thought raising an immediate objection would only exacerbate the issue. What happened was, as Mr. Durrell gave this testimony, I think there were two other questions asked, and then the jury went out for lunch. During the lunch break, his trial counsel went to the chambers of the judge and told his assistant that he wanted to make a motion for mistrial. And the judge said, well, we're about to go back in, the jury's waiting for us, let's take it up at the afternoon break. So trial counsel was in a position where he had to cross-examine Mr. Durrell, and then only later did the trial court consider the motion for mistrial. During the afternoon break, the trial counsel explained that he didn't believe a limiting instruction or an objection could cure the prejudice, which is why he moved for a mistrial instead. So at the afternoon break, the court didn't really rule on the motion for mistrial. He deferred it yet again until the next morning, and then at that time he denied the motion for mistrial. Didn't counsel for Wiggins bring this up later as well? Yes, Your Honor. Isn't that weird? I mean, isn't counsel responsible for making it worse? Right. Are we supposed to honor that? I mean, that seems like a dangerous precedent. Well, Your Honor, that is a very good question. And as I was stating before, after having been denied to hear the motion for mistrial during the lunch break, he had to come back and cross-examine the witness. And he, in his trial strategy, decided that he needed to cross-examine Mr. Durrell on whether he had disclosed these prior car thefts to law enforcement in advance of the trial. Mr. Durrell testified that he had not, but it turns out later that we find out that he had, in fact, disclosed the prior car thefts to the lead prosecutor, who was aware of this interview with law enforcement and did not disclose the information to the trial counselor for Mr. Wiggins. It was focused on the mistrial. Yes, Your Honor. It seems very strange to me to say the prejudice that requires a mistrial was in part caused by counsel going back to the well on this topic. Well, Your Honor. It's really just strange. I mean, you can imagine how that could be abused. Yes, Your Honor. Of course. And the trial court actually used a clear error analysis in determining whether or not a mistrial should go forward because the trial counsel did not make a contemporaneous objection to the testimony. And the trial court actually found that the evidence was marginally admissible under 404B. And the question of whether or not a limiting instruction would be given was kind of kicked down the road until after trial. And then it was only given at the end of the jury instruction. So if we're looking at, first of all, whether the testimony was improper, I think we have a clear case that it was because it was directly elicited in violation of a court order holding that it should be excluded. And then when you get to the Zern factors that you have to balance to determine whether any later curative instruction is going to ameliorate the prejudice of the defendant, you have to ask whether the testimony was directly solicited, whether the prosecution's line of questioning was reasonable, whether the limiting instruction was clear, forceful, and immediate, whether there was evidence of bad faith on the part of the prosecution, and then finally whether the testimony was only a small part of the prosecution's case against the defendant. And I think that in this case, all five factors weigh in favor of a finding that the prejudice to the defendant was so strong that it couldn't be cured. Here, with regard to the first factor, the testimony was... Has there ever been a mistrial granted and upheld where the defense counsel went back to the same topic and therefore exacerbated the prejudice and gets rewarded with a mistrial? Has that ever happened? I haven't been able to find a case, Your Honor. So if we're looking at the first factor, I think we have clearly that the prosecution elicited the testimony. On the second factor, the question of whether or not the prosecution's line of questioning was reasonable, we have the prosecutor's own admission to the court during the hearing on the motion for mistrial that she didn't have a proper basis for eliciting the testimony under the rules, that there was no proper purpose, that it was just an inadvertent mistake. And so that goes to whether or not the line of questioning was reasonable, and she admitted that it was not. Now, we have the government's argument on appeal that the testimony was elicited to explain to the jury why Mr. Durrell was having a hard time testifying against Mr. Wiggins. But I would submit that the timing of the question belies that assertion because what happened was, is this question was asked at the end of the government's questioning of Mr. Durrell and almost immediately before a lunch break. At that point, Mr. Durrell had already testified regarding his friendship with Mr. Wiggins and had explained that the friendship made it difficult for him to testify. He had already testified extensively about the crime and about his plea agreement. And the timing of the question, the result of which was that the jurors left for lunch with the testimony that Mr. Wiggins and Mr. Durrell had stolen cars together previously in the forefront of their minds. We submit, Your Honor, that this is a clear case of governmental overreach. If you review the trial transcript in its entirety, it becomes clear that this was actually a close case and that the prosecution knew that. They were relying on Tyree Durrell to carry the day here and it's apparent from reading his testimony in full that he really did struggle on the stand and that he didn't perform as well as the prosecution believed he might. And this question almost seems like a last-ditch effort to rehabilitate him and explain his equivocating testimony. With regard to the third factor, whether the limiting instruction was immediate, clear, and forceful, here we have an instruction that's not given until the end of trial. It's briefly mentioned in the jury instructions at the very end of the recitation and that diminishes its forcefulness and effectiveness. On the fourth element, whether there was evidence of bad faith, here we have a motion in limine seeking to exclude any reference to Mr. Wiggins having stolen cars previously. In response to that motion in limine, the government says, we don't intend to introduce any evidence of the defendant's prior criminal acts. We have a court order that says, reference to the defendant's prior criminal acts shall be excluded from the prosecution's opening statement in case in chief. And then we have a direct eliciting of this information by the prosecution from its main witness at trial. I would submit to your honors that that is evidence of bad faith and, in fact, this court in U.S. v. Forrest at 17 F3D 916 specifically held that bad faith does exist where testimony is elicited in contravention of a prior court order. And in that case, what happened was prior to trial, the judge said, all right, no one is supposed to bring out evidence of the defendant's prior criminal acts. And he told the prosecutor, he was like, be sure you tell your witnesses that. And the prosecutor did. But during the trial, the witness just spontaneously blurted out the information regarding the prior criminal acts. Now, in Forrest, the court did find it wasn't an abuse of discretion to deny the motion for mistrial, but they said that the case was a close one because there was this evidence of bad faith by the witness, by the prosecution's witness in blurting out the information.  I'm sorry, your honor? The court here did not find bad faith, right? It didn't really make a finding regarding bad faith. The trial counsel for Mr. Wiggins did say that he believed there was an issue of prosecutorial misconduct, and the trial court did acknowledge that the government had indicated it would not introduce evidence of prior criminal acts during the motion in limine, but there was never a specific, you know, factor one, factor two, factor three, four, so on analysis. Why do you think it was prejudicial? Well, I think it was prejudicial because this case involved a carjacking, which is the theft of a vehicle. And you have the prosecution, actually the only witness who was able to identify Mr. Wiggins as having engaged in this crime at all was Tyree Durrell. And he tells the jury, yeah, Mr. Wiggins has stolen cars with me before. And so, you know, you're dealing with a crime that involves the same act, stealing a car, and you have the prosecution's main witness, the only person who identified Mr. Wiggins as having participated in the crime, telling the jury that he had done it before. And this court has discussed on many occasions when there's testimony that would tend to lead a juror to believe he did it once, so he probably did it this time, that's inherently prejudicial to the defendant. Thank you, Your Honors. I see my time is up. Thank you, Counsel. Thank you. May it please the Court, Andrew Goetz for the United States. At bottom, the defendant is challenging his carjacking conviction based on one isolated snippet of testimony, unobjected to testimony, that the prosecutor never mentioned again, much less emphasized during this three-day trial. How do you, I mean, this is what motions in limine are for. You know, counsel's diligent, you anticipate a potential problem, and you deal with it, and the court also, I mean, you'd like to think you could rely on the representations of counsel. Like, where does this come from? Well, I want to answer that question directly, Judge White. The answer is this order did not cover the testimony here, and the judge three times found that this prior order did not cover the testimony here. It was not covered by the government's response to the motion to eliminate, and it was not covered by the court's order. What did the order say? The order referred back to the government's representations and said, I think that's a fine position, I'm going to adopt those representations. It was on the record 931 to 932 of the transcript. The district court basically adopted the government's representations. Those representations had three categories to them, three specific categories. Criminal history resolved or considered under HIDTA, the Homes Useful Training Act. That's not this. The second category was if the defendant testifies, and that's a condition precedent, if the defendant testifies. That didn't happen. Criminal history under Federal Rule of Evidence 609. 609 deals with criminal convictions, not bad acts. So that's not this either. Then the third category was a reference to the defendant, quote, unquote, being in the system. Again, that refers to the criminal justice system. That's not this. And if the court looks at, and I direct it to page 1228 of the record. This is helpful information, but out of curiosity, when you look at the motion limine and the argument, is it fair for them to have thought, which you just read, you're right, it doesn't sound like it covers it. But when you look at the motion limine and the conversations about it, would it have been fair for them to think it would cover this? No. In fact, the district court found that it didn't cover it, and it found it three times, Judge Sutton. That's page 1228. The district court says, and this is a direct quote, this was not the subject of a prior defense motion or court ruling. That's a direct quote. And then one page earlier, the district court had also said this testimony, and this is another direct quote, doesn't specifically go to the motion and the criminal history that Mr. Pookrum, meaning defense counsel, sought to strike. So we have twice, after the motion for mistrial, where the court said that this didn't fall within the order. And that's the crux of their bad faith argument here. They spent a lot of time accusing the prosecutor of bad faith. And it may have been thoughtless, but it was not bad faith, and it did not violate that court order. And the district court here found that it did not violate the court order. And I direct the court again to page 1231, where the district court again says, and I'm paraphrasing here, that it was not grounds for a mistrial based on the violation of a court order. So the district court, who reviewed the motion in limine, and who reviewed the government's response, and who ruled on that order, found that it was not a violation of the court order. That takes a lot of the wind out of the sails of the defense here, trying to hinge their bad faith argument on a violation of a court order that never happened. I don't even know how this works in criminal trials, but a motion in limine always goes to the district court judge. It wouldn't go to a magistrate. So Judge Murphy was doing both. Yes, I think, I'm not aware of any instance where it's gone to a magistrate. It's so close to trial, usually that it will go to the district judge. It went to him. Yes, that is correct. I got it. So it went to Judge Murphy, who had that motion before him. Now, Judge Sutton, to answer your question, defense counsel not only used this testimony, but actually used it pretty effectively to damage the credibility of the government's cooperating witness, because he used it to show that the cooperating witness had not disclosed this information earlier and had not been forthcoming. That fit the defense theme, that this cooperating witness had not been forthcoming. That was the heart of their cross-examination. So this didn't hurt the defense. It helped the defense. And you're going to raise another good point, which is defense counsel can't complain about something that he or she exacerbates, especially when they do it strategically here to undercut the credibility of the government's witness. They can't then say, oh, well, now that I've made the problem worse, supposedly, that should also be grounds for mistrial. They can't do that. And even if this court were to assume or conclude that Judge Murphy was incorrect, that this testimony was admissible, and we're not conceding that that's true, it would not be grounds for mistrial. This was one line, one question and answer worth of unobjected to testimony during a three-day trial. The prosecutor here immediately cabined that testimony and said that the previous car thefts had not involved carjacking and had not involved the use of a firearm. The court gave a limiting instruction. Yes, the court did not give one immediately, but that's because defense counsel did not take up the court's invitation to give that limiting instruction immediately. The district court offered to give the instruction immediately, and defense counsel never said that he wanted it. And that limiting instruction, when it did come, was adopted from this court's pattern instruction on 404B evidence and was actually stronger in telling the jury to disregard that evidence than the usual 404B pattern instruction. And that's page 877. And getting further to the harmlessness point, defense makes some hay out of the fact that there was a split verdict here. The reason for the split verdict was that Wiggins' participation in the carjacking was corroborated by other evidence besides Durrell's testimony. Wiggins' use of the gun, which was the subject of the 924C acquittal, was not corroborated by any additional information. His participation in the carjacking was corroborated by the cell phone information, more specifically, the cell site location records and being caught with the victim's cell phone six days after the carjacking. If the court recalls, the cell site location records had placed the cell phone in the vicinity of Durrell's house, Durrell's school, and Wiggins' house in the days immediately after the carjacking. Then six days after the carjacking, when Durrell and Wiggins were pulled over, the cell phone was in the seat underneath Wiggins, in the backseat of the car. That was the victim's cell phone, and Wiggins claimed it as his own. So that's corroborative evidence that Wiggins and Durrell were the two people involved in the carjacking. There was not similar corroborative evidence that Wiggins was the one who had the gun. That explains the jury split verdict, not this one line of unobjected to testimony. I'm happy to answer any further questions that the court has on this or any other issue. We would ask, then, that the district court's judgment be affirmed. Thank you. Thank you, counsel. Your Honors, I would like to directly address the assertion that the testimony regarding Mr. Wiggins having stolen cars previously was not included in the motion in limine. And as the government noted, the court did refer back to its statements on the record in a later written order as being the basis for its ruling on the motion. And I would like to read from the transcript to let you know exactly what it was that the court said at the time. The court said that the... This is during the hearing on the motion in limine filed by Mr. Wiggins' trial counsel. There had been an assertion by the government that the reference to stealing cars previously wasn't within the scope of the motion in limine. So I just wanted to clarify that. The court characterizes the motion in limine as seeking exclusion of any of the defendant having been in the system before or having, quote, a long criminal record of stolen cars, close quote. And this is what the court says. The government indicated in their response that they don't plan to introduce any evidence of the defendant's prior criminal history or statements about him being in the system or having a criminal record of stealing cars previously. So just to be clear, what you've said so far, are any of those inaccurate? I mean, which one of those statements covers what happened? Because I thought he was describing carjacking, not getting caught. Mr. Durrell was describing stealing cars with Mr. Wiggins on a prior occasion. So that would be evidence that Mr. Wiggins stole cars previously. Right, but what I'm trying to figure out is which words you just said cover that. He wasn't referring to prior convictions, and I thought... Okay, Your Honor, I understand the distinction. Unless a defendant opens the door to any sort of cross-examination attack by taking the stand and testifying and possibly, quote, unquote, opening the door to such testimony, I think that's a very reasonable and appropriate response under the law. And I will therefore prohibit in the government's opening statement or case in chief any reference to the defendant's prior criminal history, any Holmes Youthful Trainee Act disposition, any reference to the defendant being in the system before or a long criminal history. So that was the ruling on the motion in limine. I don't understand why you're disagreeing with the government on this. Well, I see the distinction you're making, Your Honor, and I admit that it is a valid one, the distinction being between a criminal record of having stolen cars previously and simply having stolen cars previously, and I do understand that distinction. The last thing that you said that the court said it was going to prohibit was a long criminal history, but it didn't tack on of stealing cars. And you've tacked on the of stealing cars, but I didn't find it in the record that the court tacked that on. Right, I see that, Your Honor. The motion in limine did address stealing cars, and that portion of his motion in limine was granted. But counsel, and this is at the point where they were having the exchange with the judge about the mistrial, and at that point, counsel said, well, I didn't really know all about all these stealing cars, and if I had, I would have put it in the motion in limine. So did he or didn't he put it in the motion in limine? Right, Your Honor, you raise an excellent point that I wanted to address, and I was worried I wouldn't have enough time. Go ahead. The reason that he did not put it in his motion in limine, because this information was never provided to him, in the final pretrial conference in this matter, the court directed all parties to exchange pretrial information by May 8th, and then the trial began on August 8th. And part of that pretrial information would have been witness interview notes where Mr. Durell told prosecution that he had engaged in this prior car theft activity with Mr. Wiggins. That information was never provided to counsel. Right. And you argue that, did you develop this in your briefs? Yes, Your Honor, and it was actually also raised by appellant's trial counsel. Where did you develop this in your briefs? I just want to make sure we're not... Your Honor, we actually addressed that in our section regarding the government's bad faith in presenting this testimony, and we raised the point... But that's a mistrial. The relief is a mistrial. The Jenks Act is a whole different remedial scheme. Right, Your Honor, but the question... You know the questions I'm going to ask, so I won't ask them. I'll let you... No, I apologize. No, no, I'm serious. I know what I'm going to say, so I want you to deal with it. Okay, I was trying to resolve the issue of why it wasn't in the motion in limine. And now I feel like we've gone down a rabbit hole, but it wasn't in the motion in limine because the trial counsel did not have the information. And during the motion for mistrial, the prosecution came forward and said, oh, here's all these witness interview notes that we had that we forgot to give to trial counsel. And in those witness notes... Just to be clear, you're not bringing a separate Jenks Act problem. You're saying if asked why we didn't more directly deal with this in the motion in limine, we didn't have enough information. Yes, Your Honor. Which would also explain why the district court judge didn't directly address it in the motion in limine. Yes, Your Honor. It still leaves us in a situation where it's hard to say the motion in limine was violated. So that's kind of where we end up, I think. Yes, Your Honor. Thank you. I see that my time is up, unless you want me to... No, I think you've addressed the issues, counsel. Thank you. The case will be submitted. Thank you, Your Honor. Oh, counsel, we know that you're CJA counsel, and we always like to make sure you understand how much we appreciate that work. Even if we don't always show it during our... Yeah, sometimes we're a little harder than you might like, but the fact of the matter is the system wouldn't work very well but for the work that the CJA counsel do, and we appreciate it very much. Thank you so much, Your Honors, and I very much appreciate this opportunity to appear before you today. Thank you.